EASTERN DIST.
June, 1837.

WILLIAMS
vs.
REYNOLDS.

---

## WILLIAMS vs. REYNOLDS.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

In case of a continuing guaranty until a certain time, the guarantor cannot revoke it in the meantime, at his pleasure, in such a manner, as to render the condition of the person guaranteed more onerous without indemnifying him for liabilities already incurred. He will be allowed to renew notes and obligations to which he was a party under the guaranty at the revocation.

The person guaranteed is not bound to receive any thing but money in discharge of his claims under the guarantee. He is under no obligation to the guarantor, to accept a transfer of a stock of goods from the debtor, or a *dation en paiement.*

Notice to the guarantor by the guarantee, that the debtor has failed and that he is on his paper to the amount of the guaranty, is sufficient to bind the former.

This is an action to recover the sum of five thousand dollars, under a mercantile guaranty. The plaintiff, W. C. Williams, was endorser and surety for the firm of Reynolds & Ayars, of Louisville, Kentucky, at their failure in July, 1833, under the following guaranty from James M. Reynolds, Esq., then residing in Mississippi.

On the 1st October, 1832, Mr. Reynolds writes to Mr. Williams, and says, "I am informed by Mr. Robert Ayars, that you occasionally endorse for him. My nephew, Wm. Reynolds, having associated himself with Mr. Ayars, in business, I am desirous of affording them some aid, and asked Mr. Ayars what I should do. In reply, he requested me to forward a guaranty for your endorsement for Reynolds & Ayars, to the extent of five thousand dollars, as they may require it, *which I now do,* and must beg to refer you to Mr. Ayars, (who will hand you this,) to apologize for my taking this liberty without a personal acquaintance."

On the 23d November, he writes as follows, to Mr. Williams, "I am, in receipt of your valued favor of the 1st instant, acknowledging the receipt of my note guarantying the safety of your endorsement for Messrs. Reynolds & Ayars, of your city, to the extent of five thousand dollars, which I now confirm. This I intend as a standing accommodation to them at home ; and I now offer to you a further guaranty for your endorsement to the extent of five thousand dollars, on bills of exchange, which they, the said Reynolds & Ayars may have occasion to draw on their consignees, in New-Orleans, on account of shipments of produce they may make from time to time ; *these guarantees to continue and be in force until the 1st day of January,* 1834."

The defendant pleaded a general denial.

The evidence showed that during the continuance of this guaranty, Williams endorsed on the paper of Reynolds & Ayars, in bank and otherwise, to the amount of more than five thousand dollars, at the time of their failure, about the 20th July, 1833. That on the happening of this event he wrote to Mr. Reynolds, who was then at Philadelphia, informing him of what had occurred, to which Mr. R. replied,

" *Dear Sir :*   I am this moment in receipt of your favor of the 29th ult., informing me that Reynolds & Ayars had stopped payment, and that you were on their paper for a considerable amount, under my guaranty.   Rest assured, I will strictly comply with my guaranty, and will be in your city in a few weeks, on my way home, when all shall be made straight."   "I am happy to hear from you that they will be able to pay all their debts, and have something handsome left."

*Le Roy H. Shepard,* a witness for defendant, says he was a clerk to the firm of Reynolds & Ayars, and that the bills and notes sued on were endorsed by Williams, for said firm, under the guaranty of James M. Reynolds, the defendant.   That Williams was in great habits of intimacy with Reynolds & Ayars ; was generally in their counting room, and had access to some of their correspondence, and might have had to all of it for any thing he knows to the contrary.

On being asked if he knew of any correspondence of J. M. Reynolds withdrawing his guaranty, or if he had any such letter, or a copy, witness says, a letter to this effect was received by Reynolds & Ayars, as I was informed by them, but I never saw it until yesterday.   He has not the original, or a copy, and does not know if said letter was ever read or shown to said Williams.   Witness, as clerk to Reynolds & Ayars, was in the habit of taking their notes and bills to Williams to endorse ; that about March, 1833, witness took a note or bill for Williams' endorsement, and he told witness that *he was aware that the guaranty of James M. Reynolds had been withdrawn ;* but that he would still go on to endorse notes and bills drawn for the purpose of taking up notes and bills which he had endorsed before he received this information.

Witness says, "Williams has not been secured for the bills and notes mentioned in the petition.   At the time of the failure of Reynolds & Ayars, (about the 20th July, 1833,) Ayars offered to pay Williams by transferring to him as much of their stock as would pay or secure him.   Witness advised him to take it, but he refused, saying, that he relied on the guaranty of James M. Reynolds, and considered himself perfectly safe."

The case was submitted to a jury under instructions from the court, who returned a verdict for the plaintiff, and from judgment rendered thereon, the defendant appealed.

*Conrad* and *Preston*, for the plaintiff, argued from the evidence and letters of guaranty, the defendant was bound for the sums claimed in the petition.

2. The plaintiff was not bound to accept a transfer of the goods of the debtor in payment or in security for the sums for which he was bound on their account.   This was forbidden by the Louisiana Code, as giving one creditor a preference over others, and the law of Louisiana must govern when it is not shown what were the laws of Kentucky on this subject.

3. The plaintiff gave the proper notice and had a right to rely on his guaranty.

*Peirce* and *Reynolds*, for the defendant, contended, that to entitle the plaintiff in this case to recover on said letter of guaranty, he must prove that after all the transactions between him and Reynolds & Ayars, under said letter of guaranty were closed, he gave notice to the guarantor of the amount and extent for which he was held responsible within a reasonable time afterwards.   7 *Peters*, 126.

2. That the plaintiff must prove, in order to recover in this cause, that he first made demand of Reynolds & Ayars of payment of his liabilities for them, and in case of their non-payment, that he gave notice of such demand and non-payment to the defendant in a reasonable time, otherwise the defendant is discharged from his guaranty.   7 *Peters*, 127.

3. That the letter of guaranty was revoked and cancelled by the defendant before the liabilities were incurred, upon which this suit is brought.

4. That said plaintiff assumed these responsibilities upon the faith and credit of Reynolds & Ayars, and not under the guaranty from defendant, which was not in force or operation at that time.

That if said guaranty had not been countermanded at the time that the plaintiff made the acceptances and endorsements

30

EASTERN DIST.
June, 1837.

WILLIAMS
*vs.*
REYNOLDS.

hereupon sued, still the defendant would not be liable under it, inasmuch as he was only collaterally bound upon the failure of the principal debtor to pay the debt, and Reynolds & Ayars being the principal debtors, offered to secure to plaintiff his demand against them, which he refused to accept.

6. That the exception made to the charge of the judge to the jury by the defendant, ought to be sustained.

7. That the verdict in this case is contrary to law and evidence, and ought to be disregarded and set aside.

*Curry*, on the same side, added, that as Williams was offered indemnity or payment, or might have secured the debts for which he was bound, it was his duty, being on the spot, to have done it ; if only for the benefit of the guarantor.

2. The guarantor, being only collaterally liable, has a right to call on the creditor or person guaranteed, to do the best he can for his benefit. He is even bound (if the expenses are paid) to prove the claim against the debtor under a commission of bankruptcy, and give or secure to the guarantor the benefit of an assignment in that way. *Fell on Mercantile Guarantees, page* 230.

3. Williams informed Reynolds that R. & A. would have considerable property left after payment of all their debts. Why did he not secure himself and his guarantor ?

*Bullard, J.,* delivered the opinion of the court.

This is an action to recover the sum of five thousand dollars on account of liabilities incurred by the plaintiff for the firm of Reynolds & Ayars, under a guaranty of the defendant. The case was tried by a jury, whose verdict was in favor of the plaintiff, and the defendant appealed.

The question whether the guaranty had been revoked, was one of fact, which, under the pleadings was submitted to the jury, and we think there is nothing in the record to authorize us to disturb their finding.

Our attention has been called to a bill of exceptions taken by the appellant to the charge of the judge. He told the

jury, that, supposing they believed Williams knew of the revocation, yet, if he could not have stopped without serious injury to himself arising out of his acting under the guaranty, or causing the failure of the person guaranteed, he was authorized to continue renewing the obligations which existed at the time of the revocation. In our opinion the court did not err in its view of the rights and obligations of the parties. The guaranty was to continue from October 1, 1832, until January 1, 1834, and admitting the right of the defendant to revoke the guaranty at his pleasure, it could not be done in such a manner as to render the condition of the plaintiff more onerous, and without indemnifying him for liabilities already incurred.

The appellant contends that the plaintiff cannot recover, because one of the firm of Reynolds & Ayars offered to pay Williams by transferring to him as much of their stock as would secure him the amount for which he was liable, which offer he refused to accept. We are of opinion that he was not bound to receive any thing but money in discharge of his claim, and that he was under no obligations towards the present plaintiff to accept a *dation en paiement.* Such a transaction with an insolvent debtor would be an attempt to obtain a preference over other creditors, which our law reprobates, and there is nothing in the record to show that the law of Kentucky is different.

It is further urged, that the plaintiff gave the defendant no notice of the amount for which he held him liable under the letter of guaranty. The record contains a letter from the defendant to the plaintiff, dated August 7, 1833, in which he acknowledges the receipt of one from the latter, informing him of the failure of Reynolds & Ayars, and that he was on their paper for a considerable amount under the guaranty. He assures the plaintiff that he will strictly comply with his guaranty, and adds, that he will be in Louisville in a few weeks, when all shall be made straight.

We think this notice all which the defendant had a right to require. He knew the limits as to the amount of his own guaranty, and is silent as to any revocation.

WILLIAMS
*vs.*
REYNOLDS.

In case of a continuing guaranty until a certain time, the guarantor cannot revoke it in the meantime, at his pleasure, in such a manner as to render the condition of the person guaranteed more onerous, without indemnifying him for liabilities already incurred. He will be allowed to renew notes and obligations to which he was a party under the guaranty at the revocation.

The person guaranteed is not bound to receive any thing but money in discharge of his claims under the guaranty. He is under no obligation to the guarantor to accept a transfer of a stock of goods from the debtor, or a *dation en paiement.*

Notice to the guarantor by the guarantee, that the debtor has failed, and that he is on his paper to the amount of the guaranty, is sufficient to bind the former,

EASTERN DIST.    Upon the whole, we think the verdict fully justified by the
June, 1837.     evidence in the case.

BERTRAND
*vs.*           It is, therefore, ordered, adjudged and decreed, that the
FRAZIER.        judgment of the District Court be affirmed, with costs.